**This order is SIGNED.**

**Dated: March 31, 2020**





**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ALL RESORT GROUP, INC.,<br><br>        Debtor. | Bankruptcy Case No. 17-23687<br>Chapter 7 |
| DAVID L. MILLER, as Chapter 7 Trustee of the Bankruptcy Estate of All Resort Group, Inc.,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Hon. R. Kimball Mosier<br><br><br>Adversary Proceeding No. 18-2089 |

## MEMORANDUM DECISION

More than two years before it filed bankruptcy, All Resort Group, Inc. (All Resort) paid personal tax debts of two of its principals. After All Resort's case converted to chapter 7, David Miller, the trustee of its bankruptcy estate (Trustee), commenced this adversary proceeding against the United States to avoid those payments as fraudulent transfers and recover them for the benefit of the estate. Neither party has disputed any of the facts concerning the payments. Since all that

remains is to apply the law to the facts, both parties have appropriately asked the Court to resolve this adversary proceeding on summary judgment. The particular legal question framed by the parties' cross-motions is whether sovereign immunity or preemption preclude a bankruptcy trustee from using 11 U.S.C. § 544(b) to recover payments made to the Internal Revenue Service (IRS).

After considering the relevant filings in this adversary proceeding, including the parties' motions and memoranda, after considering the parties' oral arguments, and after conducting an independent review of applicable law, the Court issues the following Memorandum Decision denying the United States' motion and granting the Trustee's motion.

## I. JURISDICTION

The Court's jurisdiction over this adversary proceeding is properly invoked pursuant to 28 U.S.C. § 1334 and § 157(b)(1). This matter is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(H), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

## II. FACTUAL BACKGROUND

The Court finds that there is no genuine dispute as to the following facts. All Resort filed a voluntary chapter 11 petition in this Court on April 28, 2017. After the necessary debtor-in-possession financing failed to materialize, All Resort itself sought conversion of its case to one under chapter 7.[1] The Court converted the case on September 14, 2017,[2] and the United States Trustee appointed David Miller as chapter 7 trustee.

---

[1] Docket No. 336 in Case No. 17-23687. All Resort amended that motion to change the statutory basis for conversion from 11 U.S.C. § 1112(b) to § 1112(a). *See* Docket No. 341 in Case No. 17-23687.
[2] Docket No. 343 in Case No. 17-23687.

On June 23, 2014 All Resort made two payments to the IRS that are the focus of this adversary proceeding. Both payments came from All Resort's bank account at Zions Bank and consisted of funds belonging to All Resort. The first was in the amount of $71,829.68 and it satisfied a personal federal tax debt owed by Gordon Cummins, who was an officer and director of All Resort and a shareholder in the company. The second was in the amount of $73,309.10 and it satisfied a personal federal tax debt of Richard Bizzaro, who was also an officer and director of All Resort and a shareholder in the company. The Trustee filed a complaint to avoid those payments as fraudulent transfers under 11 U.S.C. §§ 544(b) and 548(a),[3] the former of which incorporates a claim under the Utah Uniform Fraudulent Transfer Act (UUFTA),[4] and recover them under § 550.

Prior to the payments at issue, Robin Salazar filed a charge of employment discrimination against All Resort on August 15, 2011. She subsequently commenced a civil proceeding against All Resort in the United States District Court for the District of Utah on November 25, 2014. Salazar later settled that lawsuit but did not receive the full amount of the settlement before All Resort filed bankruptcy. All Resort scheduled the remaining obligation to Salazar as a $55,000 unsecured claim,[5] and she later filed a claim for that amount.[6] Neither All Resort nor the Trustee have objected to Salazar's claim.[7]

---

[3] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.
[4] The UUFTA is now known as the Utah Uniform Voidable Transactions Act after the Utah Legislature amended it in 2017, but because the Trustee's claim is based on the version of the law in effect at the time of the transfers in 2014, the Court will refer to the law as it was called at that time.
[5] Docket No. 73 in Case No. 17-23687, at 115.
[6] Claim No. 71-1 in Case No. 17-23687.
[7] Salazar filed her claim on September 1, 2017, when the case was still in chapter 11.

# III. DISCUSSION

## A. Legal Standard Under Rule 56

Under Federal Rule of Civil Procedure 56(a), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court is required to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[9] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[10] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[11]

The moving party bears the burden to show that it is entitled to summary judgment,[12] including the burden to properly support its summary judgment motion as required by Rule 56(c).[13] If the moving party has failed to meet its burden, "summary judgment must be denied," and the nonmoving party need not respond because "no defense to an insufficient showing is required."[14] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[15] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there

---

[8] Fed. R. Civ. P. 56(a).
[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[10] *Id.*
[11] *Id.* at 249.
[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[13] *See Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).
[14] *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).
[15] *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

is a genuine issue for trial."[16] The nonmoving party also "must do more than simply show that

there is some metaphysical doubt as to the material facts."[17]

When considering a motion for summary judgment, the Court views the record and draws

all reasonable inferences therefrom in the light most favorable to the nonmoving party,[18] but the

Court does not weigh the evidence or make credibility determinations.[19] "On cross-motions for

summary judgment, each motion must be considered independently."[20]

The Court notes that the United States has characterized its motion, though captioned and

presented as one for summary judgment, as "more in the nature of" a Rule 12(b)(1) or 12(b)(6)

motion.[21] Failure of Congress to waive sovereign immunity with respect to a particular claim

deprives a court of subject-matter jurisdiction over that claim,[22] and a Rule 12(b)(1) motion is a

common method to challenge jurisdiction based on the defense of sovereign immunity. As a

general rule, a motion challenging subject-matter jurisdiction under Rule 12(b)(1) cannot be

treated as one for summary judgment.[23] An exception to that rule exists that requires a court to

"convert a Rule 12(b)(1) motion to one under Rule 12(b)(6), or for summary judgment, 'if the

jurisdictional question is intertwined with the merits of the case.'"[24] That intertwining occurs

---

[16] *Celotex*, 477 U.S. at 324.

[17] *Matsushida Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[18] *E.g.*, *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citation omitted).

[19] *Nat'l Am. Ins. Co. v. Am. Re-Insurance Co.*, 358 F.3d 736, 742-43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).

[20] *Hofmann v. Drabner (In re Baldwin)*, 514 B.R. 646, 650 (Bankr. D. Utah 2014) (citing *Rajala v. U.S. Bank (In re Christenson)*, 483 B.R. 743, 746 (Bankr. D. Kan. 2012)).

[21] Docket No. 16 in Adv. No. 18-2089, at 1.

[22] *See Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009) ("The defense of sovereign immunity is jurisdictional in nature, depriving courts of subject-matter jurisdiction where applicable." (citing *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006))); *Franklin Sav. Corp. v. United States (In re Franklin Sav. Corp.)*, 385 F.3d 1279, 1289 (10th Cir. 2004) ("The United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (quoting *Lehman v. Nakashian*, 453 U.S. 156, 160 (1981))).

[23] *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997) (citation omitted).

[24] *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999) (quoting *Bell*, 127 F.3d at

"when subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case."[25] The Court concludes that its subject-matter jurisdiction is inextricably intertwined with the merits in this case. The Trustee's substantive claim is under § 544(b),[26] and the Court's ability to hear this case depends entirely on whether Congress's waiver of sovereign immunity encompasses such a claim, including the underlying state substantive law incorporated through § 544(b). Accordingly, the Court will treat the United States' motion as it has been presented: as one for summary judgment.

## B. Legal Standard Under § 544(b)

Section 544(b)(1) provides that a "trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."[27] Unlike §§ 547, 548, and 549, which are wholly bankruptcy law causes of action created by the Code, § 544(b) permits a trustee to assert claims that are "available to a debtor's creditors outside of a bankruptcy case" under applicable non-bankruptcy law.[28] In order to invoke that law, however, a trustee "must first show that there is an actual creditor holding an allowable unsecured claim who, under state law, could avoid the transfer[] in question," but "if there are not creditors

---

1228).

[25] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 978 (10th Cir. 2002) (citation and internal quotation marks omitted).

[26] While the Trustee's complaint seeks avoidance of All Resort's payments to the IRS under §§ 544(b) and 548(a), the Trustee has not moved for summary judgment on the § 548 claim. The United States' motion does not expressly argue for summary judgment on that claim either, though it does argue that § 548 is unavailing to avoid the payments since they occurred more than two years before All Resort's petition date. The Trustee did not contest that argument in his Response to United States' Motion for Summary Judgment. The Court agrees with the United States that the Trustee's § 548 claim fails because the transfers at issue did not fall within the statute's two-year look-back period. *See* § 548(a).

[27] § 544(b)(1).

[28] *Kohut v. Wayne Cty. Treasurer (In re Lewiston)*, 528 B.R. 387, 389 (Bankr. E.D. Mich. 2015). For purposes of § 544(b), "applicable law" typically means state fraudulent transfer law. *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996).

within the terms of section 544(b) against whom the transfer is voidable under the applicable law, the trustee is powerless to act so far as section 544(b) is concerned."[29] Since the trustee's rights under § 544(b) are derivative of the actual creditor's, the trustee is often metaphorically described as standing in the shoes of the actual creditor and is therefore "subject to the same defenses a transferee would have in a state fraudulent conveyance action brought by the actual creditor."[30] Absent waiver, one defense available to transferees that are governmental units in such actions is sovereign immunity.

The United States does not dispute that All Resort paid $71,829.68 and $73,309.10 from its own funds to the IRS on June 23, 2014 in satisfaction of the personal federal tax debts of Cummins and Bizzaro, respectively; that All Resort did not receive reasonably equivalent value in exchange for those transfers; and that All Resort was insolvent at the time of the transfers. In short, the United States concedes that the Trustee has proved all the elements of his § 544(b) and UUFTA claim, save one: that there be an actual creditor who could avoid the transfers at issue. With respect to the actual creditor requirement, the United States admits that Robin Salazar was a creditor of All Resort prior to June 23, 2014 and that she filed a claim in this case. But the United States argues that Salazar cannot serve as the actual creditor because sovereign immunity, asserted as a defense, would bar her suit against the United States under the UUFTA to recover All Resort's payments for the tax debts of Cummins and Bizzaro. As a consequence, the Trustee cannot satisfy the actual creditor requirement and his § 544(b) claim fails as a matter of law.

---

[29] *Sender*, 84 F.3d at 1304 (citations and internal quotation marks omitted); *see also Lewiston*, 528 B.R. at 389 ("[A] trustee can only bring a fraudulent transfer claim under § 544(b)(1) if the trustee can show that an actual creditor holding an unsecured claim against the debtor could have brought the fraudulent transfer claim outside of a bankruptcy case under applicable non-bankruptcy law.").

[30] *Mendelsohn v. Kovalchuk (In re APCO Merch. Servs., Inc.)*, 585 B.R. 306, 314 (Bankr. E.D.N.Y. 2018) (citing *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 658-59 (S.D. Tex. 2007)).

For his part, the Trustee acknowledges that, outside bankruptcy, sovereign immunity would bar Salazar's suit against the United States.[31] His contention, however, is that § 106(a)(1) abrogates that sovereign immunity in the bankruptcy context, eliminating the United States' ability to use it as a defense in this adversary proceeding, and thereby permitting Salazar to satisfy the actual creditor requirement.

## C. Sovereign Immunity and § 106(a)(1)

To promote the goals of maximization of a debtor's estate and equality of distribution among the estate's creditors, the Bankruptcy Code endows the bankruptcy trustee with powers—found in chapter 5 of the Code—to unwind certain transactions and transfers involving the debtor or its property.[32] When the United States is the party against whom the trustee seeks recovery of such transfers, however, those goals run headlong into the principle that "the United States, as sovereign, is immune from suit save as it consents to be sued."[33] Congress attempted to reconcile these concepts when it codified a waiver of sovereign immunity provision in § 106 of the Bankruptcy Code, which was promulgated by the Bankruptcy Reform Act of 1978.[34]

The Supreme Court subsequently held in two cases that that provision was insufficiently clear to waive sovereign immunity.[35] In response to *Hoffman* and *Nordic Village*, Congress

---

[31] *See* Docket No. 25 in Adv. No. 18-2089, at 3.

[32] *E.g., Begier v. IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code. . . . Section 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy."); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985) ("The powers and duties of a bankruptcy trustee are extensive. . . . The trustee . . . has the duty to maximize the value of the estate . . . . and is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property." (citations omitted)).

[33] *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 929 (10th Cir. 1996) (quoting *United States v. Testan*), 424 U.S. 392, 399 (1976)).

[34] The Bankruptcy Act of 1898, the predecessor to the Bankruptcy Reform Act of 1978, contained no express provision concerning waiver of sovereign immunity. S. Elizabeth Gibson, *Congressional Response to Hoffman and Nordic Village: Amended Section 106 and Sovereign Immunity*, 69 Am. Bankr. L.J. 311, 311 n.2 (1995).

[35] *Rescia v. E. Conn. State Univ. (In re Harnett)*, 558 B.R. 655, 658 (Bankr. D. Conn. 2016); *see also*

8

rewrote § 106 entirely as part of the Bankruptcy Reform Act of 1994.[36] The intent of the amendment was to overrule *Hoffman* and *Nordic Village* and to "expressly provide[] for a waiver of sovereign immunity by governmental units with respect to monetary recoveries as well as declaratory and injunctive relief,"[37] thereby conforming § 106 to the legal standard that waivers of sovereign immunity be "unequivocally expressed" in order to be effective.[38] Importantly, Congress thought it had already achieved this standard in 1978, noting in floor statements that former § 106(c) was "included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective."[39]

As relevant here, § 106(a)(1) now provides that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to" fifty-nine sections of title 11, including § 544. The task before the Court is to analyze the effect and scope of the waiver as applied to § 544, particularly § 544(b). While certain interpretive rules apply in the sovereign immunity context,[40] the starting point of the analysis remains the same. As with all matters of

---

*Hoffman v. Conn. Dep't of Income Maint.*, 492 U.S. 96, 101 (1989) ("[T]o abrogate the States' Eleventh Amendment immunity from suit in federal court, . . . Congress must make its intention 'unmistakably clear in the language of the statute.' In our view, § 106(c) does not satisfy this standard." (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985))); *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 39 (1992) ("Neither § 106(c) nor any other provision of law establishes an unequivocal textual waiver of the Government's immunity from a bankruptcy trustee's claims for monetary relief. . . . Congress has not empowered a bankruptcy court to order a recovery of money from the United States[.]").

[36] *In re Equip. Acquisition Res., Inc.* (*EAR*), 742 F.3d 743, 749-50 (7th Cir. 2014) (citing H.R. Rep. No. 103-835, at 42 (1994), *reprinted in* 1994 U.S.C.A.A.N. 3340).

[37] H.R. Rep. No. 103-835, at 42 (1994), *reprinted in* 1994 U.S.C.A.A.N. 3340, 3350-51.

[38] *Nordic Vill.*, 503 U.S. at 33 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)).

[39] 124 Cong. Rec. H11,091 (Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong. Rec. S17,407 (Oct. 6, 1978) (statement of Sen. DeConcini).

[40] *See Burch v. Sec'y of Health & Human Servs.*, No. 99-946V, 2010 WL 1676767, at *2 (Fed. Cl. Apr. 9, 2010) ("From [the doctrine of sovereign immunity], the federal courts have derived certain principles of *statutory construction* that have been applied in interpreting legislation that is alleged to have *waived* that immunity with respect to a particular type of suit against the United States.").

statutory construction, the inquiry begins "with the language of the statute itself."[41] Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"[42]

The additional interpretive rules regarding sovereign immunity provide shape and guidance to the analysis. Those rules include the command that a "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied,"[43] and that a waiver "must be strictly construed in favor of the Government."[44] If the statutory language contains ambiguities, they must "be construed in favor of immunity."[45] "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize [suit] against the Government."[46] These rules fall under the sovereign immunity canon, which is a "canon of construction" that courts can use in tandem with other tools of construction to interpret the law.[47] But the Supreme Court has "never held that [the sovereign immunity canon] displaces the other traditional tools of statutory construction."[48] Moreover, it is unnecessary "to resort to the sovereign immunity canon [where] there is no ambiguity" in the statute at issue.[49] In short, when faced with an assertion of sovereign immunity, courts must ask whether "Congress'[s] waiver [is] clearly discernable from the statutory text in light of traditional interpretive tools. If it is not, then [courts] take the interpretation most favorable to the Government."[50]

---

[41] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985)).
[42] *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).
[43] *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citing *Nordic Vill.*, 503 U.S. at 33-34, 37 *and Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)).
[44] *FAA v. Cooper*, 566 U.S. 284, 289 (2012).
[45] *Id.* at 290 (citing *United States v. Williams*, 514 U.S. 527, 531 (1995)).
[46] *Id.* at 290-91 (citing *Nordic Vill.*, 503 U.S. at 34, 37); *see also Marathon Oil Co. v. United States*, 374 F.3d 1123, 1127 (Fed. Cir. 2004) ("If a statute is susceptible to a plausible reading under which sovereign immunity is not waived, the statute fails to establish an unambiguous waiver and sovereign immunity therefore remains intact." (citing *Nordic Vill.*, 503 U.S. at 37)).
[47] *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589 (2008).
[48] *Id.*
[49] *Id.* at 590.
[50] *Cooper*, 566 U.S. at 291.

In construing § 106(a)(1), the Court is mindful of its charge to give effect to the law as written[51] and to eschew adopting an interpretation that deviates from Congress's intent by either expanding or constricting the meaning of the written text. Put succinctly, courts must avoid an outcome where "attempted interpretation of legislation becomes legislation itself."[52] The Supreme Court has cautioned courts in the sovereign immunity context to "not enlarge the waiver beyond the purview of the statutory language."[53] By the same measure, however, courts should also not "import immunity back into a statute designed to limit it."[54]

Section 106(a)(1) unequivocally abrogates sovereign immunity as to a governmental unit with respect to the fifty-nine Code sections listed therein, including § 544. While the United States concedes that point and asserts that it does not contest the meaning of § 106(a)(1),[55] it is apparent that what § 106(a)(1) means, at least regarding § 544(b), is a matter of distinct dispute between the parties and among courts nationwide. The nature of the dispute has to do with the peculiar characteristics of a § 544(b) claim. Its statutory neighbors, such as §§ 547, 548, and 549, are entirely federal law claims. In cases similar to this one, the United States has declined to assert sovereign immunity as a defense to a § 548 claim, acknowledging that § 106(a)(1) has rendered it unavailable.[56] But, as noted previously, § 544(b) employs non-bankruptcy law in furtherance of

---

[51] *See Richards v. Comm'r*, 37 F.3d 587, 588 n.3 (10th Cir. 1994) ("[The courts'] function is limited to interpreting the laws as written . . . .").

[52] *King v. Burwell*, 576 U.S. ----, ----, 135 S.Ct. 2480, 2495-96 (2015) (quoting *Palmer v. Mass.*, 308 U.S. 79, 83 (1939)).

[53] *Williams*, 514 U.S. at 531 (citing *Dep't of Energy v. Ohio*, 503 U.S. 607, 614-16 (1992)); *see also Nordic Vill.*, 503 U.S. at 34 (sovereign immunity waivers must not be "enlarged beyond what the language requires" (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983))).

[54] *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955); *see also Block v. Neal*, 460 U.S. 289, 298 (1983) ("The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced." (quoting *United States v. Aetna Surety Co.*, 338 U.S. 366, 383 (1949))).

[55] Docket No. 16 in Adv. No. 18-2089, at 5.

[56] *See, e.g.*, *EAR*, 742 F.3d at 746 ("Because § 548 is included in § 106(a)(1)'s list of Code provisions for which sovereign immunity is abrogated—and because the cause of action is a creature of the Code itself—the United States does not assert immunity as a defense to [Plaintiff's] recovery under that

avoiding transfers of a debtor's property. The question presented in this case is therefore whether, "by including [§] 544 in the list of Bankruptcy Code sections set forth in [§] 106(a), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted."[57] Put another way, the Court must determine whether § 106(a)(1) "abrogates sovereign immunity as to [§] 544(b)(1), including the underlying state law cause of action," or whether the waiver does not apply to that underlying law.[58] There is no question that Congress can waive the government's sovereign immunity with respect to the underlying state law causes of action incorporated through § 544(b); the dispute concerns whether § 106(a)(1) accomplished that result. If it did not, Congress would have to provide "for a separate waiver of sovereign immunity with respect to any 'applicable law,'"[59] and there is also no question that Congress has not done so. Courts have split on this issue,[60] including two circuit courts—the Ninth Circuit has determined that § 106(a)(1)'s waiver applies to the underlying "applicable law,"[61] while the Seventh Circuit has held that it does not.[62]

The Court concludes that the plain text of § 106(a)(1) unequivocally abrogates sovereign immunity as to the underlying state law cause of action. The statute contains no exceptions, qualifiers, or carve-outs in its language, "indicating a clear legislative intent to be as broad as possible in abrogating sovereign immunity in the bankruptcy context."[63] Of particular importance,

---

provision."); *Zazzali v. United States (In re DBSI, Inc.) (DBSI)*, 869 F.3d 1004, 1008 (9th Cir. 2017) (noting that the United States did not contest the trustee's § 548 claim).

[57] *VMI Liquidating Tr. Dated December 16, 2011 v. United States (In re Valley Mortg., Inc.)*, Adv. No. 12-01277-SBB, 2013 WL 5314369, at *4 (Bankr. D. Colo. Sept. 18, 2013) (quoting *Liebersohn v. IRS (In re C.F. Foods, L.P.)*, 265 B.R. 71, 85 (Bankr. E.D. Pa. 2001)).

[58] *DBSI*, 869 F.3d at 1013.

[59] *Id.* at 1011-12.

[60] *See Lewiston*, 528 B.R. at 391-94 (collecting cases); *McClarty v. Hatchett (In re Hatchett)*, 588 B.R. 472, 479-80 (Bankr E.D. Mich. 2018) (same).

[61] *DBSI*, 869 F.3d at 1013.

[62] *EAR*, 742 F.3d at 747.

[63] *Jamestown S'Klallam Tribe v. McFarland*, 579 B.R. 853, 857 (E.D. Cal. 2017); *see also Lewiston*, 528 B.R. at 397 ("There is no limitation or restriction on the abrogation accomplished by [§ 106(a)(1)].").

Congress placed marked emphasis on the breadth of the statute by choosing the critical phrase

"with respect to." The Supreme Court has held, as a matter of statutory construction, that the use

of the word "respecting," a synonym of that phrase,[64]

> in a legal context generally has a broadening effect, ensuring that the scope of a
> provision covers not only its subject *but also matters relating to that subject*.

> Indeed, when asked to interpret statutory language including the phrase
> "relating to," which is one of the meanings of "respecting," this Court has typically
> read the relevant text expansively.[65]

Even the United States conceded at oral argument that "with respect to" is broad language. By

abrogating sovereign immunity "with respect to" § 544, Congress signaled its intent that the waiver

would cover matters related to that Code section—i.e., the state law causes of action incorporated

through § 544(b).

Other aspects of the language and structure of § 106(a) support that conclusion. Many of

the analyses of the interplay between §§ 106(a)(1) and 544 have noted that § 106(a)(1) does not

distinguish between § 544(a) and (b), offering that as textual evidence that the waiver applies to

§ 544(b) and the underlying causes of action.[66] The United States, no stranger to this argument,

has a rebuttal ready at hand: Many of the sections listed in § 106(a)(1) "have subsections that do

not implicate sovereign immunity," such as § 524(f).[67] The intended deduction from this fact is

that the inclusion of § 544(b) within § 106(a)(1) says little, if anything, meaningful about

---

[64] *See Respecting*, The American Heritage Dictionary (2d College ed. 1982) (defining "respecting" as
"[w]ith respect to; concerning").
[65] *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. ----, ----, 138 S.Ct. 1752, 1760 (2018) (emphasis
added) (citations omitted).
[66] *E.g.*, *DBSI*, 869 F.3d at 1012 ("[H]ad Congress intended to limit Section 106(a)(1)'s application to
Section 544(a), as opposed to all of Section 544, it knew how to do so.").
[67] *EAR*, 742 F.3d at 749.

congressional intent to have the waiver apply to it when Congress saw fit to include other subsections "to which sovereign immunity has no application at all."[68]

Upon closer examination, however, the United States' rebuttal, rather than undermining the Trustee's position, ends up supporting it. The failure to remove certain subsections from § 106(a)(1) to which sovereign immunity cannot apply offers additional textual proof, not of sloppy draftsmanship, but instead of Congress's intent that the waiver be as broad as possible. Congress's approach to § 106(a)(1) can perhaps be described as casting a wide net, but certainly not as scattershot. Congress included fifty-nine sections within § 106(a)(1), but deliberately omitted many others, evincing a careful legislative choice about where sovereign immunity would be waived. The way in which Congress included those sections also shows a careful legislative choice. As the *DBSI* court noted, "Congress has demonstrated that it knows how to make a specific provision only applicable to a subsection of [§] 544."[69] Given that demonstrated knowledge, the presumption is that Congress acted intentionally when it included whole, undivided sections within § 106(a)(1). The inference to be drawn from that choice is that Congress wanted the waiver of sovereign immunity to apply broadly to those sections, reaching all of the statutory nooks and crannies where it could possibly apply.[70] In short, Congress appears to have used this principle in enacting § 106(a)(1): Wherever the waiver can apply to the named sections, it ought to apply. And the relevant difference between § 524(f) and § 544(b) is that a waiver of sovereign immunity can apply to the latter and the state law causes of action incorporated therein. In this way, Congress's choice not to distinguish between § 544(a) and (b) does provide meaningful evidence of legislative intent, even though subsections such as § 524(f) are caught within § 106(a)(1)'s reach.

---

[68] *Id*. at 749 n.4.
[69] *DBSI*, 869 F.3d at 1012 (citing § 546(c)(1), (d), (h) *and* § 541(b)(4)).
[70] *See EAR*, 742 F.3d at 749 ("[T]he better conclusion is that Congress simply listed undivided Code sections if any part of that section included something for which sovereign immunity should be waived.").

Section 106(a)(3) offers analogous support. That paragraph permits courts to "issue against a governmental unit an order, process, or judgment under such sections[—i.e., the sections listed in § 106(a)(1)—]or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery . . . ."[71] On its face, § 106(a)(3) applies to all of § 544. It would be a strange exercise in legislative drafting if, in § 106(a)(3), Congress expressly authorized courts to issue orders and judgments against governmental units to avoid fraudulent transfers under § 544(b) —§ 550 permits the monetary recovery—but in § 106(a)(1), an expressly-related paragraph within the same subsection, failed to waive sovereign immunity for § 544(b) claims. Such a result would render § 106(a)(3) surplusage as applied to § 544(b), and "[i]t is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"[72] Similarly, "statutes should be construed so that their provisions are harmonious with each other."[73] While it is true that § 106(a)(3) may not apply to some of the subsections listed in § 106(a)(1), the important distinction, as before, is that it can apply to § 544(b). As a result, the statutory interpretation that allows it to apply and avoids it becoming insignificant, thereby achieving the most harmonious result between § 106(a)(1) and (a)(3), ought to be favored. To hold otherwise would be to disregard the apparent congressional design to hold governmental units liable for fraudulent transfers under § 544(b).[74] The Court concludes, after examining the plain language and structure of § 106(a) using traditional interpretive tools, that "[t]here is no sovereign immunity 'tie' in this case . . . .

---

[71] § 106(a)(3).

[72] *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

[73] *Negonsott v. Samuels*, 933 F.2d 818, 819 (10th Cir. 1991) (citation omitted), *aff'd*, 507 U.S. 99 (1993).

[74] *See C.F. Foods*, 265 B.R. at 85 ("Congress amended § 106(a) by setting forth specific Bankruptcy Code sections, including § 544, to express, clearly and unequivocally, its intent that governmental units be subject to monetary judgments under those sections.").

The statute is susceptible to only one interpretation: it simply eliminates sovereign immunity"[75] with respect to the underlying state law causes of action incorporated through § 544(b).

The Court believes that this analysis does not minimize, overlook, or eliminate the actual creditor requirement of § 544(b). The United States has responded in a consistent and standard way to § 544(b) claims over the years by emphasizing that courts must "take seriously the requirement that there must exist an actual creditor who could avoid the transfers at issue outside of bankruptcy. . . . If there is no actual unsecured creditor who could bring a claim against the IRS outside of bankruptcy, then [the Trustee] cannot move forward under § 544(b)."[76] In a 2001 case, the court framed the United States' position in similar terms:

> An unsecured creditor could not bring a suit against the IRS under [applicable state fraudulent transfer law] outside of bankruptcy court because the unsecured creditor would be barred from doing so by the sovereign immunity doctrine (unless it could show that the government waived sovereign immunity). Without the existence of an unsecured creditor who has the right to commence such an action, the IRS argues, there is no cause of action that the trustee can pursue through the use of § 544 of the Bankruptcy Code.[77]

And in *EAR*, the Seventh Circuit emphasized that "Congress did not alter § 544(b)'s substantive requirements merely by stating that the federal government's immunity was abrogated 'with respect to' this provision."[78] This Court agrees that Congress did not dispose of the actual creditor requirement when it enacted § 106(a)(1), and neither party disputes that the Trustee must still show the existence of an actual creditor. But the waiver of sovereign immunity did remove the ability of a governmental unit to interpose immunity as a defense to the underlying state law cause of action

---

[75] *Lewiston*, 528 B.R. at 395.
[76] Docket No. 26 in Adv. No. 18-2089, at 2.
[77] *C.F. Foods*, 265 B.R. at 82-83; *see also Valley Mortg.*, 2013 WL 5314369, at *4 ("[T]he [United States] argues that if sovereign immunity prohibits an unsecured creditor from bringing a non-bankruptcy state law claim against [it], then sovereign immunity similarly prohibits a trustee who steps into the shoes of an unsecured creditor from brining [sic] the same non-bankruptcy state law claim under section 544(b)(1).").
[78] *EAR*, 742 F.3d at 747.

when a bankruptcy trustee asserts that cause of action standing in the actual creditor's shoes.[79] In

other words, the "abrogation of sovereign immunity means that in order to bring a § 544(b) claim,

the trustee need only identify an unsecured creditor who, *but for sovereign immunity*, could have

brought" the claim at issue.[80] "The fact that the IRS could assert the *defense* of sovereign immunity

*outside* of bankruptcy against an unsecured creditor has no bearing on the availability of that

defense against a trustee *inside* bankruptcy."[81] Here, the United States concedes that Salazar

fulfills the actual creditor requirement, except that sovereign immunity would bar any suit she

could bring against the United States under the UUFTA. But "[s]overeign immunity is the very

defense that is abrogated by § 106(a)(1)."[82] Because the Trustee, standing in Salazar's shoes, need

not defeat the defense of sovereign immunity, he has satisfied the actual creditor requirement of §

544(b).[83]

Although not necessary to this decision, the Court notes that the Code's goal of estate

maximization supports its conclusion. When enacting the Code, "Congress carefully considered

[its] effect . . . on tax collection"[84] and, as a general rule, elected to treat the IRS and other taxing

authorities on par with other creditors.[85] When Congress did seek to "provide protection to tax

---

[79] *See C.F. Foods*, 265 B.R. at 85 ("By including § 544 in the list of Bankruptcy Code sections set forth in § 106(a), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted.").

[80] *Jamestown S'Klallam Tribe*, 579 B.R. at 857 (emphasis added).

[81] *Hatchett*, 588 B.R. at 481.

[82] *Lewiston*, 528 B.R. at 396.

[83] *Franklin Savings* does not compel a different result. In that case, the Tenth Circuit held that § 106 did not waive the statute of limitations contained in 28 U.S.C. § 2401(b), which is part of the Federal Tort Claims Act. In making that determination, the Tenth Circuit stated that "[§] 106 requires a plaintiff seeking to use its waiver to demonstrate that a source outside of § 106 entitles it to the relief sought, and does not evidence any intent to exempt the plaintiff from satisfying any time-bar condition or requirement contained within that outside source." *Franklin Sav. Corp.*, 385 F.3d at 1290. This Court's holding does not exempt the Trustee from satisfying the actual creditor requirement, i.e., the "requirement contained within [the] outside source." As the Court has made clear, the Trustee must still satisfy that requirement. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209 (1983) (citations omitted).

[84] *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209 (1983) (citations omitted).

[85] *See Nordic Vill.*, 503 U.S. at 43-44 (Stevens, J., dissenting) ("In the bankruptcy context, the Court has noted that there is no reason why the Federal Government should be treated differently from any other

collectors," it did so expressly, "through grants of enhanced priorities for unsecured tax claims and by the nondischarge of tax liabilities."[86] There is nothing in § 106 that suggests that Congress intended that the IRS, or governmental units more generally, be treated differently from other creditors with respect to fraudulent transfer claims under § 544(b). Permitting trustees to recover such transfers from governmental units and non-governmental units alike helps fulfill the Code's goal "to maximize the value of the estate" for creditors.[87]

While the legislative history of § 106 is also not necessary to this decision, it supports the Court's conclusion as well. As noted previously, Congress thought it had created an express waiver of sovereign immunity in bankruptcy matters when it passed the Bankruptcy Reform Act of 1978, but the Supreme Court disagreed. In response, Congress amended § 106 to meet the standard demanded by the Supreme Court and achieve its original intent.[88] Notably, Congress drafted § 106(a)(1) to "specifically list[] those sections of title 11 with respect to which sovereign immunity is abrogated" at the suggestion of the Supreme Court.[89] In the ongoing dialogue between the legislative branch and the judiciary, these actions can only be viewed as Congress's attempt to have its intent heard clearly by the courts. In fact, Justice Stevens characterized the 1994 amendment as a "legislative clarification" undertaken for the Supreme Court's benefit.[90] Congress took prompt legislative action to overrule two Supreme Court cases that it perceived as thwarting

---

secured creditor." (citing *Whiting Pools*, 462 U.S. at 209)).

[86] *Whiting Pools*, 462 U.S. at 209 (citations omitted); *see also Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) ("[P]referential treatment of a class of creditors is in order only when clearly authorized by Congress." (citations omitted)).

[87] *Weintraub*, 471 U.S. at 352.

[88] *See* H.R. Rep. No. 103-835, at 42 (1994), *reprinted in* 1994 U.S.C.A.A.N. 3340, 3351. ("It is the Committee's intent to make section 106 conform to the Congressional intent of the Bankruptcy Reform Act of 1978 . . . .").

[89] House Judiciary Committee, Bankruptcy Reform Act of 1994—Section–By–Section Description, Cong. Rec. H 10764, 10766 (103d Cong., 2d Sess., Oct. 4, 1994).

[90] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 90 n.12 (1996) (Stevens, J., dissenting).

its intent—which it thought was already clear enough—and incorporated the Supreme Court's suggestions into its major revision of § 106 to ensure that the legislation withstood legal challenges. It is true that neither *Nordic Village* nor *Hoffman* involved § 544(b), so Congress's intent to overrule those cases may not speak specifically to how the waiver of sovereign immunity affects § 544(b).[91] But when viewed in conjunction with the text, scope, and structure of the § 106(a)(1) waiver, Congress's actions in 1978 and 1994 unequivocally evince an intent to achieve a durable and broad waiver of sovereign immunity in the bankruptcy context. Having demonstrated such an intent, this Court will not second guess it.

The Court believes that its conclusion on sovereign immunity does "not enlarge the waiver beyond the purview of the statutory language,"[92] while at the same time avoiding "import[ing] immunity back into a statute designed to limit it."[93] In holding that § 106(a)(1)'s waiver reaches the underlying state law causes of action incorporated through § 544(b), the Court concludes, as a matter of law, that sovereign immunity does not preclude the Trustee from satisfying the actual creditor requirement.

**D. Preemption Under the Internal Revenue Code**

The United States also contends that the Trustee cannot satisfy the actual creditor requirement because the provisions of the Internal Revenue Code[94] (IRC) preempt a suit brought by a debtor's creditors under state law to recover as fraudulent transfers tax payments made to the

---

[91] This case does bear certain factual similarities to *Nordic Village*, however. In that case, an officer and shareholder of the debtor used corporate funds to pay his personal federal tax debt, and the trustee of the debtor's bankruptcy estate sued to get that money back from the IRS. *Nordic Vill.*, 503 U.S. at 31. The crucial distinguishing fact is that the payment was made after the debtor filed bankruptcy, and the *Nordic Village* trustee sought to avoid the payment as an unauthorized, post-petition transfer under § 549(a). *Id.* Had All Resort paid Cummins's and Bizzaro's tax debts post-petition, sovereign immunity would offer no defense to a claim under § 549(a).

[92] *Williams*, 514 U.S. at 531.

[93] *Indian Towing Co.*, 350 U.S. at 69.

[94] Title 26 of the United States Code.

IRS. Because the Trustee stands in Salazar's shoes for purposes of § 544(b), and because Salazar's

UUFTA claim would be preempted by the IRC, the United States concludes that preemption also

bars the Trustee's recovery.

Under the Supremacy Clause of the Constitution "Congress has the power to enact statutes

that preempt state law."[95] Federal preemption can be divided into two categories, express or

implied, and express preemption "occurs when Congress 'defines explicitly the extent to which its

enactments pre-empt state law.'"[96] An example of express preemption can be found,

coincidentally, within § 544 itself. Section 544(b)(2) renders § 544(b)(1) inapplicable to certain

qualifying charitable contributions and states that "[a]ny claim by any person to recover a

transferred contribution [that meets the applicable definition] under Federal or State law in a

Federal or State court shall be preempted by the commencement of the case."[97] The United States'

argument is not based on express preemption, however, but on field preemption, a species of

implied preemption that "occurs when 'the scope of a statute indicates that Congress intended

federal law to occupy a field exclusively.'"[98] The "basic premise of field preemption [is] that States

may not enter, in any respect, an area the Federal Government has reserved for itself."[99] In

determining whether field preemption applies, the Court "must first identify the legislative field

that the state law at issue implicates," then "evaluate whether Congress intended to occupy the

---

[95] *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010) (citing *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509 (1989)).
[96] *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1129 (10th Cir. 2007) (quoting *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 792 (10th Cir. 2000)).
[97] § 544(b)(2).
[98] *Emerson*, 503 F.3d at 1129 (quoting *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002)); *see also Arizona v. United States*, 567 U.S. 387, 401 (2012) ("Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 249 (1984))).
[99] *Arizona*, 567 U.S. at 402.

field to the exclusion of the states."[100] "[P]reemption is ultimately a question of congressional

intent,"[101] and Congress's intent to occupy the field

> may be inferred from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touches a field in which the interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.[102]

The United States argues that the UUFTA implicates the field of federal tax collection and

that Congress's intent to occupy that field exclusively is implied by the scope of the IRC, "a

comprehensive integrated scheme that . . . controls, to the exclusion of any state laws, the

circumstances under which the IRS receives payment, forcibl[y] collects, refunds, repays, or

releases amounts collected, including to third parties."[103] In support of this argument, the United

States notes that 26 U.S.C. § 7426 permits a person to sue the United States in federal court if the

IRS wrongfully levies on that person's property,[104] but the IRC does not provide a remedy to

recover funds from the IRS voluntarily paid on someone else's behalf using state fraudulent

transfer law. Since Congress has not created such a remedy, and since the IRC occupies the field

of federal tax collection, the United States reasons that Salazar could not sue under the UUFTA to

recover the Cummins and Bizzaro tax payments and, consequently, neither can the Trustee.

The Court disagrees and concludes that there is no federal preemption issue here for three

reasons. First, the Trustee's § 544(b) claim is a "federal cause[] of action and therefore cannot be

---

[100] *O'Donnell*, 627 F.3d at 1325 (citing *Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 808-09 (9th Cir. 2009)).

[101] *Id.* at 1324 (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 129 S.Ct. 538, 543 (2008)); *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996))).

[102] *O'Donnell*, 627 F.3d at 1325 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990)).

[103] Docket No. 16 in Adv. No. 18-2089, at 7.

[104] A levy, at least in the context of federal tax collection, "is a legally sanctioned seizure and sale of property" to collect unpaid taxes. *EC Term of Years Tr. v. United States*, 550 U.S. 429, 430-31 (2007) (citations and internal quotation marks omitted).

preempted."[105] Second, even if the Trustee's claim were considered a state law cause of action because it relies on the UUFTA, it would not be preempted by the IRC. While it is self-evident, as a definitional matter, that Congress intended to occupy the field of federal tax collection, the UUFTA, as incorporated through § 544(b), does not implicate that field. The Trustee is not suing to collect a tax payment; he is suing to collect a fraudulent transfer.[106] "What the Trustee seeks to recover is property of [All Resort] (and [All Resort's] estate), which was given to the IRS to pay *someone else's* tax obligations."[107] Stated succinctly, the Trustee's invocation of the UUFTA to avoid the Cummins and Bizzaro tax payments does not place him within the field of federal tax collection; therefore, the UUFTA and the IRC do not conflict. It is for this reason that the United States' citation to 26 U.S.C. § 7426—and indeed the IRC itself—misses the mark. Since the IRC does not conflict with the UUFTA, the alleged absence of a remedy in the IRC to recover from the IRS, as a fraudulent transfer, funds voluntarily paid on someone else's behalf is not indicative of congressional intent to preempt claims of the kind the Trustee is asserting in this case.

Third, the Court can find no evidence in § 544 of congressional intent to preempt such claims. By writing an express preemption provision into § 544(b)(2) concerning the avoidance of certain charitable contributions, Congress demonstrated its ability to make its preemptive intent clear. But it is silent on whether the IRC preempts state law fraudulent transfer claims incorporated through § 544(b) to avoid payments made to the IRS. Of course, it is true that "the existence of an

---

[105] *DBSI*, 869 F.3d at 1015 n.14; *see also Hatchett*, 588 B.R. at 483 ("Since § 544(b)(1) is a federal cause of action to recover property fraudulently transferred by a debtor, there is no conflict between state and federal law which might give rise to a preemption argument. The Trustee's cause of action under § 544(b)(1) is not preempted by the IRC.").

[106] *See Valley Mortg.*, 2013 WL 5314369, at *5 ("In pursuing the present claims against the IRS, the trustee is not standing in the shoes of the debtors, as taxpayers, seeking to recover tax refunds, but rather, in the shoes of a creditor seeking to recover property fraudulently transferred . . . ." (quoting *Sharp v. United States (In re SK Foods, L.P.)*, Adv. No. 10-2117-D, 2010 WL 6431702, at *4 (Bankr. E.D. Cal. July 14, 2010))).

[107] *Hatchett*, 588 B.R. at 483.

'express preemption provision does *not*' . . . impose a 'special burden' that would make it more difficult to establish the preemption of laws falling outside the clause,"[108] but the Supreme Court has also made it clear that "[t]he case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them."[109] Here, Congress drafted § 544 to incorporate applicable non-bankruptcy law, aware that it could be invoked to bring suit against governmental agencies, including the IRS. Even if the UUFTA operates in the field of federal tax collection, which the Court holds it does not, it stretches credulity to conclude that Congress would expressly draw non-bankruptcy law into a section of title 11 only to have that law's application circumscribed by title 26 through implied preemption. Congress knew how to expressly preempt such law, but did not do so. Its silence on the issue indicates an intent to tolerate that law's operation there rather than an intent to preempt its operation impliedly. Accordingly, the Court concludes that the Trustee's claim under § 544(b) and the UUFTA is not preempted by the IRC.

## IV. CONCLUSION

The United States has conceded that the Trustee has established all of the elements of his § 544(b) claim except for the actual creditor requirement, and it contests that requirement on the grounds that sovereign immunity and preemption would bar Salazar's suit against it outside of bankruptcy under the UUFTA. Here, the Court determines as a matter of law that § 106(a)(1) unequivocally waives the federal government's sovereign immunity with respect to the underlying

---

[108] *Arizona*, 567 U.S. at 406 (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869-72 (2000)).
[109] *Wyeth*, 555 U.S. at 575 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-67 (1989)).

state law causes of action incorporated through § 544(b) and that the IRC does not preempt such claims. Accordingly, the Trustee has satisfied the actual creditor requirement and has carried his burden to show that he is entitled to judgment as a matter of law on his § 544(b) claim. The Court will therefore grant summary judgment to the Trustee under § 544(b) avoiding the Cummins and Bizzaro tax payments and, as a consequence, will deny the United States' motion for summary judgment. In addition, because § 106(a)(1) abrogates the government's sovereign immunity with respect to § 550, the Court will award the Trustee a judgment in the amount of $145,138.78, representing the combined amount of the Cummins and Bizzaro tax payments. A separate Order and Judgment will be issued in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Reid W. Lambert | rlambert@strongandhanni.com, tlawrence@strongandhanni.com |
| Elizabeth R. Loveridge | eloveridge@strongandhanni.com, rchristensen@strongandhanni.com, eloveridge@ecf.axosfs.com |
| Virginia Cronan Lowe | Western.taxcivil@usdoj.gov |
| Landon Yost | landon.m.yost@usdoj.gov, western.taxcivil@usdoj.gov |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.